UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Scott L. Snider,

       Plaintiff,

       v.                                                    Civil Action No. 2:14-cv-99-jmc

Carolyn W. Colvin,
Acting Commissioner of Social Security
Administration,

       Defendant.


**<u>OPINION AND ORDER</u>**
(Docs. 8, 10)

     Plaintiff Scott Snider brings this action pursuant to 42 U.S.C. § 405(g) of the

Social Security Act, requesting review and remand of the decision of the Commissioner

of Social Security denying his application for disability insurance benefits.  Pending

before the Court are Snider's motion to reverse the Commissioner's decision (Doc. 8),

and the Commissioner's motion to affirm the same (Doc. 10).  For the reasons stated

below, the Court GRANTS Snider's motion, DENIES the Commissioner's motion, and

REMANDS this case for further proceedings and a new decision.

## Background

Snider was 40 years old on his alleged disability onset date of August 27, 2009[1].
He has had learning problems since he was a child, receiving special education assistance
in school.  (AR 309.)  He attended school only into the fifth grade, failing to finish that
year.  (*Id.*; AR 32.)  He has job experience as a construction worker and a prep cook, but
has not worked full time since 2006.  (AR 309.)

For approximately 28 years, Snider was in a relationship with a woman with
whom he shared a son, his only child.  (AR 35–36, 308–09.)  After a long period of
deterioration, his son died in 2006 at age 19 due to muscular dystrophy.  (*Id.*)  In 2009,
Snider ended the relationship with the mother of his son, and she left the state.  (AR 309.)
As of November 2012, Snider was living in an apartment with his girlfriend of three
years.  (AR 36, 53, 399.)  He is close with his family, particularly his sister and mother,
who help him get to his medical appointments.  (AR 399.)

In 2003, Snider broke his ankle, resulting in surgery with implantation of
stabilization hardware.  (AR 328.)  Soon thereafter, most of that hardware was removed
due to complaints of pain.  (*Id.*)  Snider was able to work thereafter but continued to
complain of ankle pain.  (*See, e.g.*, AR 290–91, 300–02, 322, 339, 367–68.)  In October
2011, after MRI scans demonstrated injury and ligament disruption in the ankle, Snider
underwent another ankle surgery.  (AR 42, 339, 365–66.)  Thereafter, he wore a walking
boot, then crutches, and finally a brace.  (AR 344–45, 351.)  Although his ankle pain

---

[1]  Initially, the alleged disability onset date was January 15, 2011, but at the November 2012
administrative hearing, Snider amended that date to August 27, 2009.  (AR 29.)

initially improved after surgery, by April 2012, Snider was reporting ankle pain once again.  (AR 46, 343–44, 353.)  As of September 2012, he was still wearing the ankle brace and was taking five Percocet pills daily for pain.  (AR 422.)

In addition to his ankle problems, Snider suffers from depression and anxiety, mainly related to the death of his son.  (AR 48, 300–04, 308.)  At the November 2012 administrative hearing, Snider testified that he was unable to work due to the combination of his ankle pain and mental impairments, including a limited ability to concentrate.  (AR 56.)  He also has weak academic skills, including below average verbal and math abilities.  (AR 309–10.)

In February 2011, Snider filed applications for supplemental security income and disability insurance benefits, alleging disability due to anxiety, depression, and "ankle problems."  (AR 224.)  He subsequently updated the disability application to add that his depression and anxiety were so bad that many days he did not want to get out of bed and he was having difficulty being around crowds.  (AR 260.)  He further stated that he needed to have surgery on his ankle again and could stand on it for only a few hours each day.  (*Id.*)  On November 8, 2012, Administrative Law Judge (ALJ) Paul Martin conducted a hearing on the disability application.  (AR 25–73.)  Snider appeared and testified, and was represented by counsel.  On November 16, 2012, the ALJ issued a decision finding that Snider was not disabled under the Social Security Act from his amended alleged onset date through the date of the decision.  (AR 9–19.)  Thereafter, the Appeals Council denied Snider's request for review, rendering the ALJ's decision the

final decision of the Commissioner.  (AR 1–3.)  Having exhausted his administrative

remedies, Snider filed the Complaint in this action on May 13, 2014.  (Doc. 3.)

### ALJ Decision

The Commissioner uses a five-step sequential process to evaluate disability

claims.  *See Butts v. Barnhart*, 388 F.3d 377, 380–81 (2d Cir. 2004).  The first step

requires the ALJ to determine whether the claimant is presently engaging in "substantial

gainful activity."  20 C.F.R. §§ 404.1520(b), 416.920(b).  If the claimant is not so

engaged, step two requires the ALJ to determine whether the claimant has a "severe

impairment."  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the ALJ finds that the claimant

has a severe impairment, the third step requires the ALJ to make a determination as to

whether that impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404,

Subpart P, Appendix 1 ("the Listings").  20 C.F.R. §§ 404.1520(d), 416.920(d).  The

claimant is presumptively disabled if his or her impairment meets or equals a listed

impairment.  *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the ALJ is required to determine the

claimant's residual functional capacity (RFC), which means the most the claimant can

still do despite his or her mental and physical limitations based on all the relevant

medical and other evidence in the record.  20 C.F.R. §§ 404.1520(e), 404.1545(a)(1),

416.920(e), 416.945(a)(1).  The fourth step requires the ALJ to consider whether the

claimant's RFC precludes the performance of his or her past relevant work.  20 C.F.R.

§§ 404.1520(f), 416.920(f).  Finally, at the fifth step, the ALJ determines whether the

claimant can do "any other work."  20 C.F.R. §§ 404.1520(g), 416.920(g).  The claimant

bears the burden of proving his or her case at steps one through four, *Butts*,

388 F.3d at 383; and at step five, there is a "limited burden shift to the Commissioner" to

"show that there is work in the national economy that the claimant can do," *Poupore v.*

*Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (clarifying that the burden shift to the

Commissioner at step five is limited, and the Commissioner "need not provide additional

evidence of the claimant's [RFC]").

    Employing this sequential analysis, ALJ Martin first determined that Snider had

not engaged in substantial gainful activity since his alleged disability onset date of

August 27, 2009.  (AR 11.)  The ALJ explained that, although Snider had worked full

time as a laborer in June and July of 2010, this was an "unsuccessful work attempt" under

the Social Security Act because the work was performed for less than three months and it

was stopped due to Snider's medical conditions.  (AR 11–12.)  At step two, the ALJ

found that Snider had the following severe impairments: "status post fracture of the ankle

(remote) with three surgical procedures, depression, posttraumatic stress disorder[,] and a

history of learning difficulties."  (AR 12.)  At step three, the ALJ determined that none of

Snider's impairments, alone or in combination, met or medically equaled a listed

impairment.  (AR 13–15.)  Next, the ALJ determined that Snider had the RFC to perform

"light work," as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b), with the following

additional limitations:

> [Snider] is limited from walking for more than 45 minutes to one hour at a
> time for a total of 4 hours during an 8-hour workday.  He can occasionally
> use the right lower extremity for operation of foot controls and he can
> occasionally push and pull.  He is limited to only occasional climbing of
> ladders and stairs.  He has no difficulty balancing or stooping.  He can

occasionally crouch and he can frequently kneel and crawl. He is limited to unskilled repetitive tasks with 1-3 step instructions. He can maintain such activity for 2 hours at a time. He can adapt to routine workplace changes. He needs to avoid larger crowds of more than 10–12 people, but can otherwise interact with coworkers, supervisors[,] and the public.

(AR 15.)

Given this RFC, the ALJ found that, although Snider was unable to perform his past relevant work, there were other jobs existing in significant numbers in the national economy that he could perform, including electrode cleaner, plastics design applier, and buckle wire inserter. (AR 17–18.) The ALJ concluded that Snider had not been under a disability from the amended alleged disability onset date of August 27, 2009 through the date of the decision. (AR 18–19.)

## Standard of Review

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person will be found disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

In considering a Commissioner's disability decision, the court "review[s] the administrative record *de novo* to determine whether there is substantial evidence

supporting the . . . decision and whether the Commissioner applied the correct legal standard." *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g). The court's factual review of the Commissioner's decision is thus limited to determining whether "substantial evidence" exists in the record to support such decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *see Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the factfinder."). "Substantial evidence" is more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Poupore*, 566 F.3d at 305. In its deliberations, the court should bear in mind that the Social Security Act is "a remedial statute to be broadly construed and liberally applied." *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981).

## Analysis

Snider argues that the ALJ did not give enough weight to the opinions of treating physician Dr. Melissa Gibson and gave too much weight to the opinions of the agency consultants. Snider also argues that the ALJ erred in his assessment of Snider's credibility. In response, the Commissioner asserts that the ALJ properly analyzed the medical opinions, and that the ALJ's decision is supported by substantial evidence. For the reasons explained below, the Court finds that the ALJ did not give good reasons for affording little weight to Dr. Gibson's opinions, in violation of the treating physician rule.

A treating physician's opinions must be given "controlling weight" when they are "well []supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2).  When an ALJ gives a treating physician's opinions something less than controlling weight, he must provide "good reasons" for doing so. *Schaal v. Apfel*, 134 F.3d 496, 503–04 (2d Cir. 1998).  The Second Circuit has consistently held that the failure to provide "good reasons" for not crediting the opinions of a claimant's treating physician is a ground for remand.  *Sanders v. Comm'r Soc. Sec.*, 506 F. App'x 74, 77 (2d Cir. 2012) (citing *Schaal*, 134. F.3d at 505; *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004) ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician[']s opinion and we will continue remanding when we encounter opinions from ALJ[]s that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion.")).

In October 2012, Snider's treating primary care provider, Dr. Gibson, completed two Medical Source Statements (MSS) regarding Snider's functional limitations. (AR 377–86, 387–98.)  In the physical MSS, Dr. Gibson opined that Snider's impairments, pain, and/or effects of medication resulted in an "[e]xtreme" limitation in his ability to concentrate and focus on job-related tasks, and that Snider did not have the ability to concentrate and focus on job-related tasks for continuous two-hour periods consistently throughout an eight-hour workday and a five-day workweek.  (AR 377.)  Dr. Gibson stated that Snider's ability to complete job-related tasks would be "[g]reatly

8

slower" than normal, and he would need more than ordinary rest breaks during a workday or shift. (*Id.*) Dr. Gibson further opined that Snider could not carry any weight, could lift less than 10 pounds occasionally or intermittently, could stand and/or walk for only one hour, needed to lie down once during the day for about an hour due to the effects of medication, and was limited in the amount of pushing and pulling he could do with his legs. (AR 378–79.) Dr. Gibson concluded that Snider would probably be absent from work one to two days per week (AR 379), explaining that Snider "would likely suffer frequent or prolonged absences [because of] his ankle injury," and would not be safe in many jobs due to gait instability and medication side effects (AR 381).

In her mental MSS, Dr. Gibson opined that Snider had an anxiety-related disorder and an affective disorder. (AR 387–88.) She stated that Snider had moderate restrictions in activities of daily living; marked difficulty in maintaining social functioning; extreme difficulty in maintaining concentration, persistence, or pace; difficulty completing tasks in a timely fashion; and had experienced one or two episodes of decompensation of extended duration, around the loss of his son. (AR 389.) Dr. Gibson explained that Snider would have difficulty responding appropriately to coworkers, supervisors, and the general public; and would likely withdraw, have a panic attack, or decompensate in reaction to minor events and changes in a routine work setting. (AR 390.) She stated that Snider's mental problems would be exacerbated under the stress of a work setting, resulting in increased anxiety and panic and decreased functioning and concentration. (*Id.*) Dr. Gibson further stated that Snider would not be able to focus and concentrate on

job tasks for two-hour periods during the workday (*id.*), and would be absent from work "likely 12 weekdays per [month]" (AR 391).

The ALJ gave "little weight" to Dr. Gibson's opinions on the grounds that they: (1) are "not well supported by [Dr. Gibson's] own clinical observations"; and (2) are "inconsistent with other substantial evidence of record." (AR 17.) These are not "good reasons" for affording little weight to Dr. Gibson's opinions, as they are not supported by substantial evidence. First and most importantly, the ALJ erred in neglecting to even mention many opinions stated in Dr. Gibson's physical MSS and *all* opinions stated in her mental MSS. Of the many opinions stated in Dr. Gibson's two MSSs, the only one discussed in the ALJ's analysis is that "[Snider] would require frequent or prolonged absences due to his ankle injury." (*Id.*) Although ALJs are not required to mention and explain every item of evidence, *see Petrie v. Astrue*, 412 F. App'x 401, 407 (2d Cir. 2011); as stated above, they must consider and give good reasons for their rejection of a treating physician's opinions, *Schaal*, 134 F.3d at 503–04. Moreover, the regulations require that ALJs "consider any statements about what [the claimant] can still do that have been provided by medical sources," even when they are not "based on formal medical examinations." 20 C.F.R. § 404.1545(a)(3).

Second, contrary to the ALJ's finding, Dr. Gibson's clinical observations do in fact support her opinions. To name a few examples, in March 2010, Dr. Gibson stated in a treatment note that Snider presented with complaints of depression, anxiety, and ankle pain despite going to physical therapy three times each week. (AR 290.) Dr. Gibson observed that Snider appeared "nervous/anxious" and exhibited right ankle pain on

examination.  (AR 291.)  In January 2012, Dr. Gibson stated in a treatment note that

Snider had increased pain in his ankle after physical therapy.  (AR 358.)  And in April

2012, Dr. Gibson stated in a treatment note that Snider presented with pain, had swelling

and decreased range of motion of the right ankle, was not sleeping well, appeared

fatigued, and exhibited a restricted and anxious affect.  (AR 353–55.)  (*See also* AR 296

("[c]ontinues with ankle pain," "[a]nxiety level is high," "[m]ood/affect flat and

depressed," "significant anxiety and depression"), 361 (mood "stressed," affect

"restricted," having ankle and foot pain), 367 ("ongoing right ankle pain, and toe pain[,]

as well as depression," "thinking may have tendon injury or allergy to medicine," "[m]ay

be going back for surgery," affect "depressed, slightly anxious").)  The Commissioner

points out several treatment notes which indicate normal findings.  Although these are

relevant, Snider accurately asserts that it is the treatment notes which indicate abnormal,

not normal, findings that are most relevant for disability purposes.  (*See* Doc. 14 at 5–6.)

Third, the ALJ's finding that Dr. Gibson's opinions are inconsistent with other

evidence of record is unsupported.  Dr. Gibson's opinions regarding Snider's mental

limitations are supported by the psychological opinions of examining consultant Dr.

Dennis Reichardt and treating licensed social worker Kathleen Paine.  (AR 308–10, 401.)

Both of these providers assigned a Global Assessment of Functioning (GAF) score of 50

to Snider, Dr. Reichardt in April 2011 (AR 310)[2] and Paine in September 2012 (AR 401),

which indicates "[s]erious symptoms (e.g. suicidal ideation, severe obsessional rituals,

---

[2]  Dr. Reichardt's notation reflected uncertainty with this assignment, however, stating: "GAF = 50?."  (AR 310.)

frequent shoplifting) OR any serious impairment in social, occupation, or school functioning (e.g., no friends, unable to keep a job)." *Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV")*, at 32 (4th ed. 2000). Based on his review of the record and clinical interview and assessment of Snider, Dr. Reichardt opined as follows in his April 2011 Psychological Report: "Without change, [Snider's] prognosis for employment would appear poor if only from a psychological perspective." (AR 310.) Dr. Reichardt explained that Snider was experiencing symptoms of anxiety and depression, had occasional panic attacks, demonstrated weak academic skills and impoverished fund of information, and had low trust of others. (*Id.*)

Regarding Dr. Gibson's opinions on Snider's physical limitations, they are supported by the fact that surgery was recommended to Snider to address his ankle pain (*see, e.g.*, AR 334, 339), as well as by the treatment notes of treating physician Dr. Terry Stein, which also address Snider's mental limitations. Specifically, in October 2009, after Snider had seen Dr. Stein twice that month for right ankle pain and after the Doctor had observed swelling and tenderness in Snider's ankle (*see* AR 301–03), Dr. Stein stated in a treatment note: "Due to [Snider's] depression, anxiety[,] and now ankle pain, he is unable to hold down a job, even a part-time job. I have filled out the assistance forms indicating this[,] saying he should be improving over the next two months[,] at which point he should be able to seek employment at least at a part-time level." (AR 300.) The ALJ found that Dr. Gibson's opinions are inconsistent with Dr. Mark Charlson's October 2012 treatment note which "described [Snider] []as having normal mood and affect . . . and . . . good range of motion and nice stability of the ankle." (AR 17 (citing AR 425).)

But Dr. Charlson, an orthopedic surgeon, did not treat Snider's mental impairments. Moreover, Dr. Charlson acknowledged in that treatment note that Snider's ankle was still not fully functional, stating that, although Snider's ankle motion and stability were good, he "does get an ache [in his ankle] if he does too much," and advising, "[w]e did know before surgery that his ankle would never be perfect." (AR 425; *see also* AR 339.)

Fourth, the ALJ failed to consider other regulatory factors weighing in favor of affording significant weight to Dr. Gibson's opinions. For example, Dr. Gibson had a lengthy and frequent treatment relationship with Snider, first seeing him in January 2008 (*see* AR 307) and regularly treating both his mental health issues and ankle problems starting in March 2010 (*see, e.g.*, AR 290, 292, 296, 318–20, 351, 353, 355, 359, 362, 365, 367–68, 420, 422). Under the regulations, more weight should be given to the opinions of a treating physician such as Dr. Gibson who has a lengthy and frequent treatment relationship with the claimant. The applicable regulation states: "Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source." 20 C.F.R. § 404.1527(c)(2)(i). Certainly, Dr. Gibson treated Snider frequently enough and for a long enough period to gain a "longitudinal picture" of his impairments. She not only treated Snider herself, but also referred him for treatment by specialists like social worker Paine (AR 399) and orthopedist Dr. Steven Landfish (AR 316), reviewed the treatment

13

notes of other treating physicians such as Dr. Charlson (AR 367), and prescribed medications for his ankle pain, depression, and anxiety (AR 267–68).

For these reasons, the ALJ's analysis of the opinions of treating physician Dr. Gibson is not supported by substantial evidence.  Moreover, the ALJ erred in failing to consider any opinions made in Dr. Gibson's mental MSS and all but one opinion contained in Dr. Gibson's physical MSS.  The Court need not reach the remaining issues raised by the parties, including the ALJ's credibility assessment and RFC determination[3], because the ALJ's findings on these issues were necessarily affected by his analysis of the opinions of Dr. Gibson and should be determined anew on remand after the ALJ has reassessed these opinions.

## Conclusion

The Court GRANTS Snider's motion to reverse the decision of the Commissioner (Doc. 8), DENIES the Commissioner's motion to affirm her decision (Doc. 10), and REMANDS for further proceedings and a new decision in accordance with this ruling.

Dated at Burlington, in the District of Vermont, this 17th day of August, 2015.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

---

[3] Snider argues *for the first time in his reply brief* that the ALJ's RFC determination–specifically the finding that Snider could walk for 45 to 60 minutes at a time for a total of four hours in an eight-hour workday–is not supported by substantial evidence.  (Doc. 14 at 8–10.)  Arguments like this, which are raised for the first time in a reply brief, are deemed waived.  *Connecticut Bar Ass'n v. United States*, 620 F.3d 81, 91 n.13 (2d Cir. 2010).